RODNEY BELLENGER *vs.* GEORGE H. MONAHAN.

SAME *vs.* THOMAS F. NALLY.

Suffolk.    February 7, 1933. — April 1, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Negligence*, Motor vehicle, Contributory, In use of way. *Wilful, Wanton or Reckless Misconduct. Motor Vehicle*, Registration. *Evidence*, Of intent.

At the trial of an action of tort for personal injuries, there was evidence that the plaintiff stopped his automobile at night on the extreme right hand side of a public bridge sixty feet wide between curbs, under a large electric light and just over the crest of the bridge; that there

was a three per cent grade on each side of the bridge; that the lights of the automobile were lit; that while the plaintiff was in the rear of his automobile, facing it and stooping to examine the tire carrier, he was struck by a truck driven by the defendant, which had approached from his rear; and that the defendant was very drunk. The defendant admitted that he might have stopped the truck; that he did not see the plaintiff's automobile until he was eighteen feet from it, and did not see the plaintiff until he was ten or twelve feet from him; and that he turned toward the plaintiff to avoid an automobile coming in the opposite direction. *Held,* that

(1) There was evidence warranting a finding that the defendant was negligent;

(2) It could not properly have been ruled that the plaintiff was negligent because he stopped his automobile on the bridge;

(3) There was evidence warranting a finding that the defendant was guilty of wilful, wanton or reckless misconduct.

At the trial of the action above described, the defendant contended that the plaintiff's automobile registered under the laws of the State of New York, was unlawfully upon the highway, and that there was a causal connection between the illegal act and the plaintiff's injuries. The accident happened on October 3, 1927. The plaintiff testified that at different times for a number of years and in 1927 up to June 28, he had worked for a corporation in Watertown in this Commonwealth, and had lived in that vicinity until June 30; that he then left the Commonwealth and went to New York, not intending to return; that his automobile, previously unregistered and kept in a barn in New York, was registered there in July, 1927, and was so registered at the time of the accident; that he drove it into this Commonwealth on September 6, not intending to remain, but intending to return to New York; that he then stayed with a friend in Boston during the twenty-eight days before the accident, his wife being with her brother and sister in Needham; that, not being able after the accident to do the only work which he could secure in New York, he went to work for his former employer in Watertown on January 1, 1928. *Held,* that

(1) There was evidence from which it could be found that when the plaintiff went to New York on June 30, 1927, he gave up his residence in this Commonwealth and became a resident of New York;

(2) It could not rightly have been ruled as a matter of law that the plaintiff's automobile at the time of the accident was unlawfully upon the highway in violation of G. L. c. 90, § 3, as amended by St. 1923, c. 431, § 1; or of G. L. c. 90, § 1, as amended by St. 1923, c. 464, § 1, and by St. 1924, c. 189.

At the trial of the action above described, it was proper to admit evidence of the intention of the plaintiff to remain in New York after leaving this Commonwealth in June, 1927.

Two ACTIONS OF TORT. Writs dated October 24, 1927.

In the Superior Court, the actions were tried together before *Macleod,* J. Material evidence is stated in the

opinion. The judge denied motions by the defendants that verdicts be ordered in their favor. There was a verdict for the plaintiff in each action in the sum of $8,000. The defendants alleged exceptions.

The cases were submitted on briefs.

*W. B. Keenan & J. A. Treanor, Jr.*, for the defendants.

*D. H. Fulton*, for the plaintiff.

CROSBY, J.   These are actions of tort brought to recover for personal injuries, sustained by the plaintiff on October 3, 1927, on North Beacon Street, in Watertown, in this Commonwealth, by reason of being struck by an automobile truck owned by the defendant Nally and operated by the defendant Monahan. In the same actions the plaintiff seeks to recover for damage to his automobile. The declarations as amended are substantially the same, each declaration containing counts for negligence and for wilful, wanton or reckless misconduct of the driver of the truck. The answer of the defendant Monahan was a general denial, contributory negligence, that at the time of the accident the plaintiff's automobile was not registered in accordance with the laws of this Commonwealth and was a trespasser on the highway and for that reason the plaintiff cannot recover. The answer of the defendant Nally was the same as that filed by the defendant Monahan, except that he further answered "that at the time and place alleged in the plaintiff's declaration, the defendant's automobile was not being operated by one who was acting as agent for the defendant within the scope of his employment." This last defence is now waived by the defendant Nally. The actions were tried to a jury. At the close of the evidence each defendant filed a motion for a directed verdict. These motions were denied. There was a verdict for the plaintiff in each case. The jury answered "No" to the following special questions: (1) "As to whether the car was illegally registered"; (2) "As to whether if it was so illegally registered, it contributed to cause the accident." The cases are before this court on the defendants' exceptions to the refusal of the trial judge to grant the defendants' motions for directed verdicts, to his refusal to give certain rulings re-

quested, to certain rulings made upon the evidence, and to the charge. The pleadings are made a part of the bill of exceptions which contains all the material evidence.

Upon the evidence considered most favorable to the plaintiff, and the reasonable inferences to be drawn therefrom, the judge correctly ruled that the evidence warranted findings of negligence and of wilful, wanton and reckless conduct of the driver of the truck. The plaintiff testified that at the time of the accident he was coming from Boston and going in a westerly direction toward Watertown to visit a friend; that about 7 P.M. as he was driving over the North Beacon Street bridge he heard a noise in the rear of his automobile, and as the rear tire carrier had been repaired that day he thought it might not be all right and stopped to see if there was any trouble with it; that he stopped on the west side of the bridge about one hundred feet from the end under a large electric light; that it had been dark for a short time; that he went to the rear of his automobile and looked at the tire carrier and stood there a minute when he was struck; that at the time his automobile, with the lights on and the emergency brake set, was parked close to the right hand curbstone, facing west, at a point just over the crest of the bridge where there was a slight down grade; that the grade was about three per cent on each side of the bridge; that when he was struck he was standing behind his automobile facing it; that he did not know what struck him at the time. The roadway on the bridge was sixty feet wide between the curbs.

The defendant Monahan testified that when he struck the plaintiff's automobile he was going around eighteen or twenty miles an hour; that the plaintiff's automobile was parked right against the curb, and the plaintiff was near the back of the left wheel stooped over, looking at the tire rack or something; that he was about ten or twelve feet from the plaintiff's automobile when he first saw the plaintiff leaning over; that "the reason why he did not see the man before then was that he was watching some one going the other way and there was a car coming down toward him

that came away over on his side of the road." He had previously testified that about six o'clock that night he went into a "speakeasy" and had three drinks of whiskey. He further testified that in the Waltham court where he was charged with operating an automobile upon a public way while under the influence of liquor he pleaded guilty.

Charles A. Cotter, a police officer, testified that at the time of the accident he was about two hundred feet from the place where it occurred; that he found the plaintiff lying with his hand and shoulders on the curbing of the sidewalk within three or four feet of an arc light; that he was bleeding from his head, and there was blood on his side, and he was unconscious. This witness further testified that Monahan staggered, that there was a strong odor of liquor from his breath, his eyes were "glassy" and he was very drunk; that he asked Monahan how the accident occurred and Monahan replied, "I don't know. I was asleep"; that from the place where the plaintiff was lying in the street down to the plaintiff's car, a distance of about fifty feet, there were skid marks on the road, and there was a dent in the left rear of the plaintiff's automobile; that the witness arrested Monahan at the place where the accident occurred and got him into the automobile that carried the plaintiff to the hospital; that when the witness came out of the hospital, about ten or fifteen minutes later, he found Monahan asleep and took him to the police station in the same automobile.

The evidence was ample to support a finding of negligence. *Blood* v. *Adams*, 269 Mass. 480. *Learned* v. *Hawthorne*, 269 Mass. 554. *McCarron* v. *Bolduc*, 270 Mass. 39. *Kirby* v. *Keating*, 271 Mass. 390. Verdicts for the plaintiff could rightly have been found against both defendants on the counts for negligence. Although the testimony of the witness Cotter that Monahan stated that he was asleep was limited to the case against Monahan, the evidence was sufficient to support the counts which alleged negligence without his testimony. As it was admitted that Monahan was the agent of Nally, the latter was chargeable with the

negligence of Monahan. It could not properly have been ruled that the plaintiff was negligent because he stopped his automobile on the bridge.

Upon the evidence most favorable to the plaintiff the jury were justified in finding that the operation of the truck in the circumstances constituted wilful, wanton or reckless conduct. *Leonard* v. *Conquest*, 274 Mass. 347. "The alleged wrongdoer acts wantonly, wilfully or recklessly only when he inflicts the injury intentionally, or is so utterly indifferent to the rights of others that he acts as if such rights did not exist. The result is a wilful and not a negligent wrong." *Isaacson* v. *Boston, Worcester & New York Street Railway*, 278 Mass. 378, 387, and cases cited at page 388. "The complete indifference to consequences distinguishes wrongs caused by wantonness and recklessness from torts arising from negligence . . . ." *Freeman* v. *United Fruit Co.* 223 Mass. 300, 302. The defendant Monahan testified that there was no need of his lights to see the plaintiff's automobile which was parked against the curb; that he thought an automobile coming in his direction was coming over onto his side of the road; that when he first saw the plaintiff's automobile it was about eighteen feet away; that he did not want to collide with the automobile coming in the opposite direction and he gave his wheel a turn the other way and thought he could go between the two but going through two cars in a condition like that was not a job for a man who had been drinking whiskey. He further testified that "He knew that he had a truck on his hands and that if he did not have full control of his faculties that he might kill somebody"; and that he might have stopped his truck. The cases at bar cannot be distinguished in principle from *Isaacson* v. *Boston, Worcester & New York Street Railway*, 278 Mass. 378, and cases there collected in which the evidence was held sufficient to warrant a finding of wilful, wanton or reckless misconduct.

The defendants in support of the motions for directed verdicts on the negligence counts contend that the plaintiff's automobile, registered under the laws of the State of New York, was unlawfully upon the highway, and that there was

a causal connection between the illegal act and the plaintiff's injuries. See *Cook* v. *Crowell*, 273 Mass. 356, 359; *Jenkins* v. *North Shore Dye House, Inc.* 277 Mass. 440. It could not rightly have been ruled that the plaintiff's automobile was unlawfully upon the highway. He testified in substance that at different times in years previous to the accident he had been working for the Perkins Institution for the Blind, in Watertown; that he first went there to work in 1918; that in 1927 he worked there from January 1 until the last of June following; that from January 1, 1927, to June 10, 1927, he lived in Watertown, from June 11, 1927, until June 30, 1927, he lived in Cambridge, and from September 8, 1927, until October 3, 1927, the date of the accident, he lived in Boston; that he did not work for the Perkins Institution for the Blind in the summer of 1927, he had left there on June 28 of that year. He testified, subject to the defendants' exception, that when he left there he did not intend to return to this Commonwealth but decided to stay in New York because his mother had died and left him her estate there. He further testified that his automobile had been registered under the laws of New York in his name from July 2, 1927, down to the time of the accident; that he first brought it into this Commonwealth in 1927 on September 6, and prior to that time it had been in New York, unregistered, and kept in a barn; that when he returned to this Commonwealth on September 6 he came with a friend, a young man who was coming here for the purpose of studying and had asked him to accompany him as he never had been here before; that after he had shown his friend around he intended to go back to New York and did not intend to go back to work for the Perkins Institution for the Blind; that when he came back on September 6 he stayed twenty-eight days before the accident occurred, and during that time he lived in the apartment of his friend in Boston, and while there he went to the Perkins Institution for the Blind but did not take a permanent job there; that during all this time his wife was in Needham with her brother and sister; that he went back to work at the Perkins Institution for the Blind on the first

day of January of the year following the accident because if he remained in New York the only kind of work he could get there would be farm work and after the accident he was unable to do it. There was evidence from which it could be found that when the plaintiff returned to New York on June 30, 1927, he gave up his residence in this Commonwealth and became a resident of New York.

The defendants contend that, even if he went to New York with the intention of abandoning his residence here, as he had resided in Massachusetts for a period of more than thirty days in the year 1927 he should be held to have had his automobile illegally registered. It was provided by G. L. c. 90, § 3, as amended by St. 1923, c. 431, § 1, in force at the time of the injury to the plaintiff, that ". . . a motor vehicle or trailer owned by a non-resident who has complied with the laws relative to motor vehicles and trailers, and the operation thereof, of the state or country in which he resides may be operated on the ways of this commonwealth without registration . . . provided, that said state or country grants similar privileges to residents of this commonwealth . . . and the registrar shall determine what states or countries grant similar privileges and the extent of the privileges so granted, and his determination shall be final." It is also provided by G. L. c. 90, § 1, as amended by St. 1923, c. 464, § 1, and St. 1924, c. 189, in force at the time of the accident here in issue, that "Nonresident" as used in the automobile statutes shall mean "any resident of any state or country who has no regular place of abode or business in the commonwealth for a period of more than thirty days in the year. . . ." (See now St. 1931, c. 142, § 1; G. L. [Ter. Ed.] c. 90, § 3.) "The statute is designed to afford to such nonresident the protection of the automobile registration of his home State or country during a temporary sojourn within this Commonwealth not exceeding a period of thirty days." *Jenkins* v. *North Shore Dye House, Inc.* 277 Mass. 440, 443, 444. The statute cannot rightly be construed to mean that one who formerly was a resident here, but who has ceased to be a resident, because he has removed his residence

from the Commonwealth to another State or country, is not included within its terms, and not entitled to the thirty days' immunity during a subsequent temporary sojourn within this Commonwealth. The statute reads "has" and not "has or has had no regular place of abode or business in the commonwealth for a period of more than thirty days in the year." The decision in *Avila* v. *DuPont,* 278 Mass. 83, is not at variance with what is here decided. The defendants' requests 1, 4 and 5, in substance that the plaintiff was unlawfully operating an automobile upon the highway, were denied rightly. The question raised by these requests was one of fact to be determined upon all the evidence from the facts found and the reasonable inferences to be drawn therefrom. It follows that the defendants' exception to that portion of the charge wherein the judge left this question to the jury to decide must be overruled.

The defendants' exception to the admission of evidence of the intention of the plaintiff to remain in New York cannot be sustained. His intention was a question of fact and formed an essential element in the case. *Fitchburg* v. *Winchendon,* 4 Cush. 190. *Reeder* v. *Holcomb,* 105 Mass. 93. See also *Viles* v. *Waltham,* 157 Mass. 542. The judge was not required to instruct the jury as to the legal effect of a portion of the evidence. *Barnes* v. *Berkshire Street Railway,* 281 Mass. 47. We find no error in the rulings respecting the admission or exclusion of evidence, in the refusal to rule as requested, or in the instructions to the jury. It is manifest that the motion of the defendant in each case for a directed verdict could not properly have been given. As we find no error in the conduct of the trial the entry must be

*Exceptions overruled.*