**COCHRAN et al. v. M & M TRANSP. CO.**
**No. 3552.**

Circuit Court of Appeals, First Circuit.
June 7, 1940.

242

John W. Baker, of Providence, R. I. (Benjamin F. Lindemuth, F. Snowden Skinner, and Daniel S. T. Hinman, all of Providence, R. I., on the brief), for appellants.

William A. Gunning, of Providence, R. I., for appellee.

Before MAGRUDER, Circuit Judge, and PETERS and FORD, District Judges.

MAGRUDER, Circuit Judge.

Earlier phases of this litigation are reported in M & M Transportation Co. v. Cochran, 1 Cir., 100 F.2d 207, and in Cochran v. M & M Transportation Co., 1 Cir., 110 F.2d 519.

We now have before us appeals by the plaintiffs from judgments for the defendant entered upon verdicts for the defendant on counts alleging simple negligence.

On the night of November 16, 1936, a motor-truck of the Providence Teaming Company, operated by its servant Cochran, became stalled on a Massachusetts highway. Shortly thereafter a motor-truck driven by a servant of the M & M Transportation Company crashed into it from the rear. The resulting fire consumed both vehicles. Cochran received severe personal injuries. Cochran and the Providence Teaming Company brought their separate actions for damage to person and to property, respectively. These actions have been consolidated for purposes of appeal.

Issues as to negligence and contributory negligence were submitted to the jury. There was also a charge relating to the Massachusetts trespasser-on-the-highway doctrine, the applicability of which to the facts of this case is the principal point presented on the present appeal.

The plaintiff Providence Teaming Company is a Rhode Island corporation. Its truck had been duly registered under the Rhode Island law, and though it carried sufficient liability insurance to satisfy the requirements of the Massachusetts law, no registration had been procured in Massachusetts, nor had the said plaintiff obtained from the Registrar of Motor Vehicles the nonresident permit required by Massachusetts law as a prerequisite to lawful operation in Massachusetts beyond a period of thirty days after the date of entry of the vehicle in any one year.[1] The

---

[1] Mass.G.L. (1932, Ter.Ed.), c. 90, § 3, provided: "Motor vehicles owned by non-residents. Subject to the provisions of section three A and except as otherwise provided in section ten, a motor vehicle or trailer registered in any other state or country and owned by a non-resident who has complied with the laws relative to motor vehicles and trailers, and the operation thereof, of the state or country of registration may be operated on the ways of this commonwealth without registration under this chapter, to the extent, as to length of time of operation and otherwise, that, as finally determined by the registrar, the state or country of registration grants substantially similar privileges in the case of motor vehicles and trailers duly registered under the laws and owned by residents of this commonwealth; provided, that no motor ve-hicle or trailer owned by a non-resident shall be so operated beyond the expiration of a period of thirty days except during such time as the owner thereof maintains in full force a policy of liability insurance providing indemnity for or protection to him, and to any person responsible for the operation of such motor vehicle or trailer with his express or implied consent, against loss by reason of the liability to pay damages to others for bodily injuries, including death at any time resulting therefrom, caused by such motor vehicle or trailer, at least to the amount or limits required in a motor vehicle liability policy as defined in section thirty-four A, nor unless the owner or operator of such motor vehicle or trailer, while operating the same during such additional time, has on his person or in the vehicle in some easily accessible place

court below charged the jury that if the truck had been operated on the highways of Massachusetts beyond a period of thirty days during 1936 (as to which the evidence was contradictory) without a permit from the Registrar of Motor Vehicles, then neither plaintiff could recover for damages resulting from ordinary negligence, because under the Massachusetts rule the defendant in that event owed no duty other than to refrain from inflicting wilful or wanton injury. Objection by the plaintiffs was duly made to the charge in this particular.

■ The general rule is well settled in Massachusetts that the owner of a motor vehicle not properly registered in compliance with the Massachusetts law cannot recover for property damage resulting from a highway accident, nor can the operator of such vehicle recover for personal injuries, unless the defendant is guilty of wilful and wanton misconduct. Love v. Worcester Consolidated Street Ry., 213 Mass. 137, 99 N.E. 960; Dean v. Boston Elevated Ry., 217 Mass. 495, 105 N.E. 616; Wentzell v. Boston Elevated Ry., 230 Mass. 275, 119 N.E. 652; Ricker v. Boston Elevated Ry., 290 Mass. 111, 194 N.E. 815. This so-called trespasser-on-the-highway doctrine has been extended to the operation of non-resident vehicles without the requisite permit from the Registrar of Motor Vehicles. Dudley v. Northampton Street Ry., 202 Mass. 443, 89 N. E. 25, 23 L.R.A.,N.S., 561; Jenkins v. North Shore Dye House, Inc., 277 Mass. 440, 178 N.E. 644.

■ It is contended by the plaintiffs that since at the time of the collision the truck was stalled on the side of the highway it was not then being "operated" within the meaning of the statute, citing Norcross v. B. L. Roberts Co., 239 Mass. 596, 132 N.E. 399, 400. In that case, the plaintiff went to Oxford Heights to get his motorcycle, intending to return with it to Worcester. Finding the engine frozen he proceeded to push the motorcycle along the highway to Worcester, a distance of a few miles. While thus proceeding slowly on the extreme right side of the road he was run into by the defendant's truck coming from the rear. The trial judge submitted to the jury the question, "Was the plaintiff riding and operating his machine at the time of the accident?", to which the jury answered in the negative. The plaintiff obtained a verdict. In overruling the defendant's exceptions, the Supreme Judicial Court said that "the plaintiff was no more operating the machine, within the contemplation of the statute, than if he had been conveying it in a wheelbarrow". But subsequent decisions have confined the ruling in the Norcross case narrowly to the particular facts there presented. It is clear that under the facts in the case at bar the trespasser-on-the-highway doctrine is applicable. In Jenkins v. North Shore Dye House, Inc., 277 Mass. 440, 178 N.E. 644, 646, where the plaintiff's intestate, a non-resident, was on a Massachusetts highway with a motor vehicle without having obtained the required permit from the Registrar, the court said: "The circumstance that the deceased may have been upon the road examining his own automobile at the time of his injury did not prevent the decedent from being found to be operating his auto-

a permit issued by the registrar which then authorizes the operation of such vehicle without registration under this chapter. The registrar or his authorized agents may, upon application, issue to any non-resident owner a permit as aforesaid in such form and subject to such conditions and regulations as the registrar may establish, if such owner satisfies him, by furnishing such evidence as he may require, that such owner is the holder of a policy of liability insurance providing indemnity or protection as aforesaid and will continue to maintain the same in full force during the life of the permit. The registrar may suspend or revoke the right of any non-resident operator to operate in this commonwealth, and may suspend or revoke the right of any non-resident owner to op- erate or have operated in this commonwealth any motor vehicle or trailer for the same causes and under the same conditions that he can take such action regarding resident owners, operators, motor vehicles and trailers owned in this commonwealth. Every such vehicle so operated shall have displayed upon it two number plates, substantially as provided in section six, bearing the distinguishing number or mark of the state or country in which such vehicle is registered, and none other except as authorized by this chapter."

An amendment of June 30, 1939, has eliminated the statutory requirement of obtaining a permit from the Registrar, so long as the necessary insurance is maintained. Mass.Acts and Resolves, 1939, c. 325.

244

mobile contrary to law and being an outlaw upon the highway." Again, in Di Cecca v. Bucci, 278 Mass. 15, 178 N.E. 447, it appeared that the plaintiff's automobile, at the time of the collision, was stopped beside the road while some of the occupants had gone to get gasoline; it was held that the plaintiff could not recover for ordinary negligence, the court saying that: "The automobile was being 'operated' within the meaning of the statute." 278 Mass. at page 17, 178 N.E. at page 448. See, also, Cook v. Crowell, 273 Mass. 356, 173 N.E. 587; Bellenger v. Monahan, 282 Mass. 523, 185 N.E. 346. The fact that the individual plaintiff Cochran, the employee of the corporate plaintiff, might not have known or have had reasonable cause to know that the truck was being operated illegally without a permit would not save him from being treated as a trespasser on the highway, since he was the "operator" of the truck. Mass.G.L.(Ter.Ed.) c. 90, § 9; Furtado v. Humphrey, 284 Mass. 570, 188 N.E. 391. Such is the harsh Massachusetts doctrine; the court below was bound to apply it. Ewell v. Cardinal, 53 R.I. 469, 167 A. 533; Erie Railroad Co. v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A. L.R. 1487.

 Error is also assigned in that the trial judge refused to charge, as requested, that the Massachusetts statute requiring a permit for the operation of a non-resident motor vehicle, "in so far as it may have applied to a non-resident motor truck being driven on a Massachusetts highway on November 16, 1936 in the interstate business of handling freight to a destination outside of the State of Massachusetts, had then been abrogated and suspended by the Federal Motor Carrier Act of 1935" [49 U.S.C.A. § 301 et seq.]. We think this point is not well taken.

At the date of the accident, the Massachusetts statute made it illegal to operate for more than thirty days a non-resident motor vehicle not registered in Massachusetts, without compliance with two conditions precedent, first, the owner must have procured a specified policy of liability insurance, and, second, the owner must have procured a non-resident permit to be issued by the Registrar after that official had satisfied himself that the owner had in force the proper liability policy. The second is an administrative provision designed to secure compliance with the insurance requirement. This is a reasonable police regulation not in conflict with the commerce clause of the Federal Constitution. Hicklin v. Coney, 290 U.S. 169, 171, 54 S.Ct. 142, 78 L.Ed. 247; Continental Baking Co. v. Woodring, 286 U.S. 352, 52 S.Ct. 595, 76 L.Ed. 1155, 81 A.L.R. 1402. See Sprout v. South Bend, 277 U.S. 163, 171, 172, 48 S.Ct. 502, 72 L.Ed. 833, 62 A.L.R. 45; South Carolina State Highway Department v. Barnwell Bros., Inc., 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734.

The Federal Motor Carrier Act of 1935, 49 Stat. 543, 49 U.S.C.A. §§ 311(c), 315, granted power to the Interstate Commerce Commission to prescribe reasonable rules and regulations requiring motor carriers to obtain liability insurance as a condition of being permitted to engage in interstate transportation. But at the time of the accident in the case at bar, the Interstate Commerce Commission had not put into effect any regulations governing liability insurance for interstate motor carriers.[2] The federal act contains no express command that existing state police regulations shall forthwith be superseded, even before the Interstate Commerce Commission in the exercise of its discretionary power has occupied the field by an appropriate regulation. "It cannot be inferred that Congress intended to supersede any state safety measure prior to the taking effect of a federal measure found suitable to put in its place. * * * Plainly Congress by mere grant of power to the Interstate Commerce Commission did not intend to supersede state police regulations established for the protection of the public using state highways." H. P. Welch Co. v. New Hampshire, 306 U.S. 79, 85, 59 S.Ct. 438, 441, 83 L.Ed. 500. See, also, Thompson v. McDonald, 5 Cir., 95 F.2d

[2] Pursuant to its statutory authority, the Interstate Commerce Commission on August 3, 1936, promulgated comprehensive rules and regulations prescribing the types and amounts of insurance required of motor carriers subject to the act; these rules were to go into effect on November 15, 1936. Ex parte No. MC-5, 1 M.C.C. 45. However, by an order issued October 28, 1936, the effective date was postponed to December 15, 1936. CCH Federal Carriers Service, par. 1539. And by another order issued December 10, 1936, the effective date was further postponed to February 15, 1937. Ibid., par. 1544. The accident involved in the case at bar occurred on November 16, 1936.

 

937, affirmed sub nom., McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164.

There is no occasion for us to intimate any opinion as to what the result would have been in the case at bar had there been in effect at the time of the accident regulations by the Interstate Commerce Commission dealing with the subject-matter of liability insurance for interstate motor carriers. Cf. University Overland Express, Inc. v. Alsop, 122 Conn. 275, 189 A. 458; State ex rel. R. C. Motors Lines v. Florida Railroad Commission, 1936, 123 Fla. 345, 166 So. 840; Railroad Commission of Texas v. Southwestern Greyhound Lines, Tex.Civ.App.1936, 92 S.W.2d 296, reversed, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1255; Lowe v. Stoutamire, 1936, 123 Fla. 135, 166 So. 310; Note, Interstate Commerce—Federal Motor Carrier Act—Extent of Supersedure of State Jurisdiction, 1938, 36 Mich.L.Rev. 450.

Other contentions on the part of the appellants have been considered and found to be without merit.

In each case the judgment of the District Court is affirmed; appellee recovers costs.